Stanard, J.
I concur unreservedly in the conclusion of my brother Baldwin, that the decree of the circuit court, denying, under the circumstances of the case, the aid of equity to the plaintiff below against the purchaser of the land, ought to be affirmed.
Some interesting questions have been earnestly and elaborately discussed, the resolution of which is not essential to the conclusion in which I have averred my concurrence. I have, however, considered those questions, and proceed briefly to state the opinions deliberately formed, or at least to which I strongly incline.
We have no information or proof of the transactions between the parties, that induced the execution of the *184 deed from Floyd to Harrison, nor of the consideration of the deed, other than that which is furnished by the instrument itself. The deed has not a single distinct lineament of a mortgage. The final covenant, that the subject conveyed was of a given value, and if that value should not be realized, the grantor would make good the deficiency, is the only matter from which it is attempted to be implied that the conveyance was a mere security for money, and consequently that the title of the grantee was defeasible, and substantially that of a mortgagee. This implication rests for its validity on the assumption that the consideration of the deed was a debt due Harrison from Floyd, or money advanced to the latter by the former, to the amount of 200 dollars. Now, though 200 dollars is stated to be the consideration of the conveyance, it does not follow that that was the consideration, much less that it was in numero the amount of a previous debt from Floyd to Harrison, or of money then advanced. The transaction might, in perfect consistency with the deed, have been an exchange of property, the consideration from Harrison being other property; or the consideration might have been a collateral duty to him from Floyd.
The subject conveyed to Harrison was in all probability most precarious, or at least so deemed by the parties, and they might fairly stipulate, to avert total loss from Harrison, that to a certain extent its productiveness should be guarantied by Floyd. If such was the nature of the transaction, every semblance of a mortgage is obliterated. The deed is an absolute one, the result of an actual'sale, in which, in place of a general warranty of the vendor, is substituted a guarantee of value to a limited amount, on a consideration which may have exceeded the amount of the guarantee, though short of the possible amount that might be realized from the subject conveyed. In this view of the *185 case, it was a contract of hazard as to value beyond 200 dollars. The deed contains nothing that forbids us from taking this view of it. The conduct of the parties evinces that they so regarded the transaction. For a period of more than ten years, during which Harrison was dealing with the property as his own, no claim or act of Floyd brought in question the title of Harrison. The first movement of Floyd after the lapse of more than ten years, is one not proceeding on the ground of rights reserved by or implied from his deed to Harrison, but one impliedly renouncing such rights, and by a fraudulent confederacy with Harrison, seeking to place Harrison’s reconveyance to him in advance of the conveyances made by Harrison to others. The acts of the parties reflect back on the original deed, and justify a court of equity (at least when relief is sought by confederates in fraud) in measuring and limiting their claims as they have measured and limited them by their own acts, and forbearing to give activity and effect to an equity which those acts shew was not contemplated by the'parties.
But the most interesting question that has been discussed is on the postulate that the deed from Floyd conveyed but a defeasible interest to Harrison, wilh a power to him to sell: and the question is whether, such being assumed as the plain effect of the deed, Harrison could sell any part of the “real subject conveyed, and by his sale and conveyance fairly made, pass to his vendee an indefeasible estate. On the part of the appellant it is insisted, that such sale and conveyance would have still left in Floyd an equity of redemption, and that as to him the estate of Harrison’s grantee would continue to be defeasible. For this proposition the case of Chowning v. Cox &c. 1 Rand. 306. is relied on. I do not mean in this place to bring in question the authority of that case, having strict regard to its particular circumstances, and the limitations on its doc *186 trine deducible from the sequel to that case, reported in 5 Leigh 654. It may however be remarked in passing, that that case was argued and decided without any reference to or notice of the decisions of the courts of Westminster and New York, on the general question respecting the efficacy of a power in a mortgage deed, authorizing the mortgagee, in particular contingencies, to sell the land, and pass an indefeasible estate to the vendee. That such sale with such effect may be made under such power, is the established doctrine of the english courts, and of the court of equity in New York; and that doctrine, as so sanctioned, seems to have been wholly overlooked by counsel and court in the argument and decision of the case of Chowning v. Cox &c. These considerations, though they may not warrant the reversal of the decision in the case of Chowning v. Cox &c. are most cogent to limit its authority to the particular case then in judgment, and forbid the application of general remarks used in that case, or argumentative expansions of general principles inferred from it, to other cases as within the reason of that case.
The case of Chowning v. Cox &c. coupled with that of Taylor's adm’rs &c. v. Chowning, presented the following traits. A conveyance was made by a debtor to a creditor to secure the payment of a debt, and with power to the creditor as trustee, in default of the payment of the debt at a specified time, to make sale of the land, discharge the debt, and pay the surplus to the debtor. Before the sale was made, the parties got involved in litigation, and the debtor, resisting the right of the creditor to sell, had obtained an injunction to prevent the sale. The parties remaining in this antagonistic position, the injunction was dissolved, and the sale was made in invilum as respected the debtor. So far the case appeared when the original cause was brought to judgment: and the court then decided that the trustee was but mortgagee, and that, his sale not *187 withstanding, the debtor’s equity of redemption was extant. The decision of the court was applied to a case in which, ostensibly, the sale was made by a party who was but mortgagee, against the assent and in spite of the active resistance of the debtor, while there wyere matters in litigation between them which might influence the extent of the debt chargeable on the land. The power to sell was claimed by virtue of a provision in the deed, by which that power was to arise in the event of the default of the mortgagor. Now, looking to the original principle on which courts of equity have interposed and reduced that which had become absolute in law to a defeasible estate, it is ascertained that it was to relieve against a forfeiture. That forfeiture, in the ordinary mortgage, accrued to the mortgagee by rendering his estate at law absolute. Courts of equity interposed to avert this forfeiture, which made the estate at law absolute in the mortgagee; and it soon became a canon of that court that no stipulation between the parties, where the conveyance was a mere security for money, should extinguish this equity. Proceeding on these principles, it was certainly plausible to treat the stipulation for power to dispose of the land to another, free from the equity of redemption, to arise on a subsequent default of the mortgagor, as partaking of the nature of a forfeiture; and as the parties could not stipulate that an absolute estate should vest and abide in the mortgagee on any future default of the mortgagor, such stipulation could not be effectual to enable the mortgagee, as a consequence of any such default by the mortgagor, to pass an indefeasible estate to a third person. On this principle the court of equity might, in apparent consistency with the principle of its original interference, have interfered to relieve against the mitigated forfeiture of a power in the mortgagee to sell, and extinguish the equity of redemption, on the subsequent default of the mortgagor. On this princi *188 pie I think the case of Chowning v. Cox &c. must rest. Beyond it, I do not deem it authority ; and even to that extent, it is confronted by the adjudications of the english and New York courts.
The effort of the counsel for the appellant has been to extract from the case of Chowning v. Cox &c. (in which he is countenanced by some of the general expressions of the court) this general principle, that a power to sell and convey real estate, free from an equity of redemption in the party who by conveyance creates the power, cannot be exercised effectually, if the party to whom the power is given is entitled as creditor or incumbrancer to the proceeds of the sale, in whole or in part. To that extent the case of Chowning v. Cox &c. is not authority; and as I humbly conceive, if the general reasons of the court cover such a principle, they do not consist with well established doctrines. My opinion is, that according to established doctrines, a creditor may act as trustee for his debtor, and the debtor may impart to a trustee, though that trustee be his creditor, a power to convey an indefeasible estate on a fair and bona fide sale to a third person, notwithstanding the whole or part of the proceeds may come to the creditor ; at least when such power is exercised without any distinct effort by the debtor to recaí the power, on grounds that ostensibly jeopard an honest and fair exercise of it. And this conforms to multiform and unquestioned transactions of society, embracing interests numerous and important. Property is conveyed in trust for the payment of debts and the support of the family of the grantor, with power to keep it together, to expend money in improvements, and to sell at discretion to pay debts, and the charges of keeping and improving the property and supporting the family. The trustee makes large advances before sale, and can get reimbursement by sale only. The power of sale is exercised, and years afterwards it is *189 ascertained that the sale was so made (and that too' at a fair and full price) by the trustee, to reimburse what is honestly due him. Yet if the principle attempted to be extracted from Chowning v. Cox &c. be sound, law and equity must regard the sale as unavailing to give an indefeasible title ; the power of the trustee would be defeated and annulled by the fact that he was interested in the sale, and the purchaser under him would be but a mortgagee. A testator by his will devises to his executor his real estate, in trust to sell at his discretion for the payment of debts, and the executor happens to be a creditor, (a case probably of frequent occurrence). Has it ever been surmised that the interest of the executor a's creditor disables him from executing the trust under the will, so as to convey on a fair sale an indefeasible estate in the property sold ? A large part of the business of society is transacted by agency, the agent to whom the power of sale is confided being creditor for advances, or other dealings of the party who confides his property with him for sale. Has it ever been supposed that under such sales the purchaser takes but a defeasible estate, if the agent be the creditor of the owner, and the sale be made to provide the means of paying his debt ? When a conveyance is made in trust, with general power in the trustee to sell and convey an absolute estate, assent is given in the most formal manner to the sale that may be made by the trustee, he and his vendee acting bona fide. In the case of Taylor's adm'rs &c. v. Chowning, 3 Leigh 654. the sale was sustained, though made under a power given to a mortgagee, to arise on a subsequent default of the mortgagor ; on the ground of the acquiescence of the mortgagor in the exercise of the power of sale, implied from the fact of knowledge of the sale, and his forbearance to interpose any objection at the sale to the exercise of the power. Was this evidence of acquiescence stronger than that afforded by the so *190 lemn creation of a general trust to be exercised by making a sale, and the continued declaration of the purpose to have the power so exercised, which the unquestioned continuance of the trust imported ? If the proof by parol, that the creator of the power knows that it is about to be executed and forbears to interpose an objection to its exercise, be adequate to secure to the purchaser under the power an indefeasible estate, must not his solemn declaration under hand and seal, unretracted, of his assent to the creation and exercise of the power, give equal security to the purchaser?
I take this occasion to state what in substance I orally stated from the bench, in expressing my concurrence in the decree that was entered in the case of Breckenridge v. Auld & others, but which I inadvertently failed to reduce to writing, and to have published as part of the report of that case.
My concurrence in the decree in that case was in no degree influenced by the case of Chowning v. Cox &c. 1 Rand. 306. In that case Auld, who sold to Strider, had an absolute deed from Breclcenridge, who had no interest in the land but that arising from a secret trust between him and Auld. The deed to Auld was absolute, for the purpose of enabling him to make sale of the land. Such being the situation of the title, Auld, as the fee simple owner, made sale of the land to Strider by a contract entirely fair on the part of Strider, and Strider took possession. In this state of things, Breclcenridge made known and asserted his title under the secret trust. Had Strider insisted on his purchase, my unhesitating opinion was that it ought not to have been invalidated in deference to the claim of Breclcenridge under his secret trust, and that so far as Strider was concerned, Breclcenridge was as much bound as if he himself had made the sale. The case of Chowning v. Cox &c. in its utmost latitude, was unavailing to defeat a fair purchase from one held out to the world as the *191 fee simple owner, and so held out for the very purpose of making the sale. But in that case Strider, so far from insisting on his purchase, was a plaintiff before the court below, asking a rescission of the contract. Breckenridge also asked for a rescission ; and as to Auld, as between him and Breckenridge, he was but an incumbrancer, having no substantial interest in the question whether the land remained Breckenridgds, charged with his incumbrance, or Strider's, subject to the same charge. So far then as respected the question whether the sale to Strider should be sustained, both the parties having substantial interest in that question concurred in asking that the sale should be rescinded : and on that ground only, I concurred in the decree rescinding the contract.
Decree affirmed.